JOHN PHILLIPS, ET AL., *v.* JACOB C. EADES, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—425.]

**Agreed Boundary Line.**

Although a boundary line agreed to by parol in 1868 is not enforcible in a contest over it in 1875, yet the fact that it was made furnishes strong evidence that the line agreed upon is the true line. When persons interested in establishing such line, who are not parties to the agreement, were present at least a part of the time it was being run and were fully advised of the purpose for which it was run, made no objections to it, they are to a certain extent bound by it. Good faith required them to make known the fact that they would not abide by the line as run, and the chancellor should not interfere to relieve them by establishing a different line unless the evidence is clear that the agreed line is not the true line.

APPEAL FROM TAYLOR CIRCUIT COURT.

November 27, 1880.

OPINION BY JUDGE COFER:

What is known in this record as the agreed line was run and marked and stones planted at each end in February, 1868, with the admitted consent and agreement of the Phillips on one side and George L. Eades on the other, and with the knowledge of Jacob C., Robert C. Eades and Whitley, and without any objection expressed on their part to the surveyor or to the Phillips.

Soon after the line was run, Phillips commenced fencing and have ever since held up to it. Although Jacob seems to have expressed some dissatisfaction, he took no steps to effectually disavow it until in 1875, when he procured the services of the processioners, and in conjunction with George and Whitley, commenced to run lines and plant stones within Phillips' enclosure.

While the chancellor cannot enforce that agreement even against George Eades, because it was in parol, yet the fact that he expressly made it, and Jacob and Whitley, though present at least a part of

the time and fully advised as to the purpose for which the line was run, made no objection to it, furnishes strong evidence that the line agreed upon is the true line. Good faith required them to make known the fact that they would not abide by the line as run, and the chancellor should not interfere to relieve them by establishing the line further east unless the evidence is clear that the agreed line is not the true line.

The evidence is too voluminous to warrant us in attempting anything like an analysis of all of it. There are not sufficient evidences on the ground to enable the court to say with certainty where the true line is. The deeds to R. C. and John Eades, and from R. C. Eades to Jacob and George, all call for and to run with Gannel's line; and their land is described in the former deed as a part of Allen Gannel's survey.

It is thus made plain that R. C. and John Eades entered under Allen Gannel, and that their eastern boundary was Gannel's line. They do not show that they ever claimed beyond that line, nor do they show with anything like certainty where the line is, or how far east they claimed. There is no proof of a marked or defined line along their eastern border. In their answer they say the line has been in dispute ever since the plaintiffs purchased, and the fact that they undertook to have their land processioned indicated that they did not themselves know the extent to which their lines ran or their true eastern boundary.

The northeast and southeast corners called for in their deed are not found, nor is the location of either established by evidence showing where the corners called for actually stood. They attempt to establish their line not by proof showing where it was actually run, but by commencing at their northwest and southwest corners and running east on one line the distance called for in this deed, and then running the east line south until it intersects the south line, which is extended by this process several poles beyond the distance called for in their deed. Not only this, but they extend their north and south lines several poles east of Gannel's line. The undisputed evidence shows that the point "4" (four) "fallen ash, four beeches and two sugar trees" is a corner to Allen Gannel's patent.

To run the patent call from that point will run the line some distance west of the agreed line, yet this is ascertained to be Gannel's line by the same process that they ascertain the line running S. 25 E. from 8 (eight) to be their deed line. Unless they can show that when

their land was surveyed to them by Taylor the lines were extended beyond the line N. 25 W. from "4" (four) they would be compelled to stop at that line, for their deed calls for it, and cannot go beyond it except by evidence that the lines were actually run to some other point. If they could find their northeast and southeast corners as called for in the deed they might perhaps go to them, although they are east of Gannel's line. But not being able to show where these corners actually stood, nor where the line between them (their east line) actually run, they would be compelled to stop at the Gannel line.

But we think there is enough in the record to show that the agreed line is the true line of Gannel's patent, although the call run from the fallen ash would place it elsewhere. One witness says, in substance, that R. C. Eades told him the line run near the old well, and one or two testify that Gabheart so stated while he owned and occupied the land now owned by Phillips. Another says that when the surveyor was trying to find the Gannel line when the suit between Gabheart and Cabbel was pending in the Green Circuit Court, R. C. Eades and others were present and some of them showed the surveyor where to begin, and from his statement the line then run must have been very near the agreed line R. C. Eades was then living on one side of the line, claiming up to it, and George C. Eades and Gabheart were living on the other side and claiming to the same line, and it is not probable that they would have been mistaken at that day as to the true location of the line. Another witness says that the father of the appellee, Whitley, then an old man, pointed out to him a tree which he said was Gannel's corner, and that that tree stood not far from the northern end of the agreed line.

The deed from Knight to Gabheart, dated in 1838, calls to run with Eades' line 138 poles to a black oak, and thence N. 9 W. 90 poles to a poplar and ash. These latter trees are at "5" on Miller's map. This deed not only serves to show that there is a mistake in the deed from Shively to Phillips and from Nathan Phillips to Shively, and prior deeds for the same land, but that Eades' line is not as far east as they now claim it. All these deeds call to run with Whitley and Eades' line which can only be done by running away from the course called for.

There is no evidence conducing in any considerable degree to prove that Gannel's line is where Eades claims their line to be. They seem to have rested their case mainly upon evidence intended to

show that the Gannel line was not where the Phillips claim it, and upon an effort to show that their deed calls will include the land in contest and that the Shively deed does not include it.

As already intimated, they cannot go east of the Gannel line without showing that their boundary, as surveyed, went beyond it, or that they have claimed to a marked and defined boundary east of that line. As further said they failed to show either that their boundary was surveyed beyond the agreed line, or that they had a marked line beyond it to which they claimed and held.

On the other hand, the Phillips show a possession extending back to 1805, when William Eades is by Caleb Cox proven to have been in possession of the land now claimed by them. The deeds under which they claim all call to run from the poplar and ash, Whitley's corner, with Whitley's line and Eades' line, and all, except that from Knight, call to run to a black walnut, buckeye and sweet gum corner to Eades, and one witness, at least, testifies that R. C. Eades recognized these trees as his corner.

No question is raised in the pleadings as to the line between Whitley and Phillips, or as to the 6¾ acres reserved on the south end of the tract conveyed by Shively to the Phillips, and we need not consider any question connected with either.

For the reasons indicated the judgment is *reversed,* and cause remanded with directions to render a decree settling the line between the parties as herein indicated, and establishing Whitley's passway according to the terms of Shively's deed to John and Samuel Phillips.

*J. R. Robinson, for appellants. R. S. Montague, for appellees.*